# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**THOMAS DANIEL O'GRADY,**

     **Plaintiff,**

**vs.**                             **Case No.  1:17cv09-CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of the Social
Security Administration,**

     **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This Social Security case was referred to the undersigned upon
consent of the parties, ECF No. 8, by United States District Judge Mark E.
Walker.  ECF No. 9.  It is now before the Court pursuant to 42 U.S.C.
§ 405(g) for review of the final determination of the Acting Commissioner
(Commissioner) of the Social Security Administration denying Plaintiff's
application for a period of disability and Disability Insurance Benefits (DIB)
pursuant to Title II of the Social Security Act and Plaintiff's application for
Supplemental Security Income (SSI) pursuant to Title XVI of the Act.  *See*
ECF No. 1.  After careful consideration of the record, the decision of the
Commissioner is affirmed.

## I.  Procedural History and Facts

On May 8, 2013, Plaintiff Thomas Daniel O'Grady filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income.  Tr. 184-92.[1]  Both applications alleged disability beginning March 7, 2009.  *Id.*  The applications were based on neck injury and nerve damage, loss of feeling in his right arm, double vision, constant migraines, and poor circulation in his legs.  Tr. 68.  The applications were initially denied on June 25, 2013, and again on reconsideration on September 9, 2013.  Tr. 123-34.

Plaintiff requested a hearing, which was held before Administrative Law Judge (ALJ) Stephen C. Calvarese by video conference on April 16, 2015.  Tr. 30-64.  Plaintiff appeared in Gainesville, Florida, with counsel, Martin J. Goldberg.  An impartial vocational expert, Ronald J. Spitznagel, also testified.  Prior to the hearing, Plaintiff asked to amend the onset date to October 27, 2012, Tr. 264, which was granted by the ALJ on the day of the hearing.  Tr. 33.

The ALJ issued a decision on April 30, 2015, finding that Plaintiff has not been under a disability as defined in the Social Security Act.  Tr. 14-24.

---

[1] Citations to the transcript/administrative record (ECF Nos. 11, 11-1 through 11-14) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

Plaintiff's request for review by the Appeals Council was denied on

November 23, 2016.  Tr. 1-6.  Thus, the decision of the ALJ became the

final decision of the Acting Commissioner and is ripe for review.

Accordingly, Plaintiff, represented by counsel, filed this complaint for

judicial review pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

*See* ECF No. 1.

## II. Findings of the ALJ

The ALJ made the following pertinent findings:

1.  "**The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.**"  Tr. 16.

2.  "**The claimant has not engaged in substantial gainful activity since October 27, 2012, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).**"  Tr. 16.

3.  "**The claimant has the following severe impairments: disorder of the cervical spine, migraine headaches, and poor near vision of 20/100 (20 CFR 404.1520(c) and 416.920(c)).**"  Tr. 16.  The ALJ found that the Plaintiff also had several other non-severe impairments.  Tr. 17.

4.  "**The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**"  Tr. 17.

5.  "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  The claimant can stand for 6 hours, walk for 6 hours, and sit for 6 hours in an 8-hour workday with normal breaks.  The claimant can occasionally climb ladders,**

ropes, and scaffolds. He can frequently climb ramps and stairs. The claimant has unlimited balancing. He is able to perform frequent stooping; frequent crawling; unlimited kneeling, and unlimited crouching. The claimant is limited to frequent reaching overhead with both arms. He is limited to frequent grasping, handling, and gross manipulation with the right hand. The claimant needs to avoid concentrated exposure to extreme cold, humidity, vibration, and hazards (including machinery and heights). The claimant has poor near vision (20/100) and good far vision (20/40)." Tr. 18.

6. "**The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**" Tr. 22.

7. "**The claimant was . . . 50 years old, which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).**" Tr. 22.

8. "**The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**" Tr. 22. Plaintiff testified at the hearing that he is a college graduate with a degree in fine arts. Tr. 33-34.

9. "**The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).**" Tr. 22.

10. "**Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are not transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969(a), and 416.968(d)).**" Tr. 22-23. The ALJ found based on the vocational expert testimony that although Plaintiff cannot perform a full range of light work, he could perform the representative occupation of cleaner, housekeeping, DOT #323.687-014, light unskilled, SVP 2, with 750,000 jobs available in the national economy. Tr. 23.

11. "**The claimant has not been under a disability, as defined in the Social Security Act, from October 27, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**" Tr. 23.

Based on these findings, the ALJ found that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act and is not entitled to disability benefits.  Tr. 24.  The ALJ also found that Plaintiff is not disabled under section 1614(a)A(3)(A)[2] of the Social Security act and is thus not entitled to supplemental security income.  *Id.*

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."[3] Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

---

[2] Section 1614(a)(3)(A) of the Social Security Act is codified at 42 U.S.C. § 1382. *See* Higginbotham v. Barnhart, 163 F. App'x 279, 280 n.1 (5th Cir. 2006).

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence

(citations omitted).  The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to disability insurance benefits if he or she is under a disability prior to the expiration of her insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v),[4] the Commissioner analyzes a claim in five steps:

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations herein should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work available in significant numbers in the national economy in light of the claimant's RFC, age, education, and work experience.[5] *See* Phillips v. Barnhart, 357

---

[5] Residual functional capacity is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228-29

(11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d

1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the

Commissioner carries this burden, the claimant must prove that he or she

cannot perform the work suggested by the Commissioner.  Hale v. Bowen,

831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled and,

consequently, is responsible for producing evidence in support of his claim.

*See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.  The responsibility

of weighing the medical evidence and resolving any conflicts in the record

rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir.

2007) (unpublished).

The opinion of the claimant's treating physician must be accorded

considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); *see*

20 C.F.R. § 404.1527(c)(2).[6]  This is so because treating physicians "are

likely to be the medical professionals most able to provide a detailed,

longitudinal picture of [the claimant's] medical impairment(s) and may bring

---

[6] This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence

or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Some opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986). "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996). Although physicians' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility for assessing the claimant's RFC. A treating physician's opinion that a claimant is unable to work and is

disabled would not be entitled to any special weight or deference.  The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner, and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6.  In Lewis, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.

Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(2), (5)[7]; *see also* Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that opinions of specialists may be particularly important, and entitled to greater weight than those of other physicians, with respect to a certain diseases that are "poorly understood within much of the medical community"); Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 65 n.13 (11th Cir. 2010)

---

[7] *See* note 6, *supra*.

(unpublished) (same)). Although a claimant may provide a statement containing a treating physician's opinion of her remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. 20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

**IV. Analysis**

**A. The Findings of the ALJ**

The ALJ found that Plaintiff has the following severe impairments: disorder of the cervical spine, migraine headaches, and poor near vision (20/100). Tr. 16. Plaintiff's non-severe impairments are diabetes mellitus without mention of complication and not stated as uncontrolled; moderate obstructive sleep apnea treated with CPAP; leg and foot pain; and mild median neuropathy at the right wrist, but with normal manual dexterity and functional use of hands and upper extremities. Tr. 16-17. In concluding that Plaintiff has the residual functional capacity to perform light work, with restrictions, the ALJ cited Plaintiff's testimony at the hearing that he does not have any problem with poor circulation in his legs, he can bathe and dress himself, prepare simple meals, load the dishwasher, do laundry, vacuum, dust, sweep, mop, and grocery shop. Tr. 19; Tr. 38-40.

Plaintiff testified at the hearing that because of his vision, he cannot read or use the computer very well.  Tr. 41.  He said he has glaucoma and double vision, and will be seeing a specialist.  He said, "Maybe they're talking surgery there" for his double vision.  Tr. 37, 45, 46.  He testified he can bathe and dress himself, do household chores, do light cooking, drive during the day, and grocery shop.  Tr. 38-40.  Due to problems with his hand, he said he cannot hold the equipment needed to do the art he used to, and he cannot write very well.  Tr. 47.  He said his constant headaches, and his migraines, make it hard for him to concentrate.  Tr. 47-48.

The ALJ also cited Plaintiff's testimony that he can lift 10 to 20 pounds and can sit or stand for several hours.  Tr. 19; Tr. 42.  Although the Plaintiff testified he has migraine headaches three to four times a week, and regular headaches all the time, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely credible.  Tr. 19.

The medical evidence relied on by the ALJ to support the finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms included records showing that after a 2009 work-related injury causing neck and shoulder pain, he reported in 2010 that he was not having regular headaches and had occasional tightness and

discomfort in his right upper cervical and mastoid region.  Tr. 20.  The ALJ

noted that Lance Chodosh, M.D., saw Plaintiff on June 20, 2013, for a

consultative examination at the request of Disability Determinations.  Tr. 20

(citing Tr. 410-17).  In that examination, it was noted that Plaintiff's straight

leg raise was negative to 80 degrees bilaterally while supine, limited by

tight hamstrings, and negative to 90 degrees bilaterally while sitting.

Tr. 412.  Plaintiff had 5/5 strength in the upper and lower extremities, with

4/5 right grip strength.  Manual dexterity was normal, with Plaintiff being

able to write and remove and replace a screw cap on a small bottle, and

coordination was good.  *Id.*  Gait was normal and standing balance was

normal.  Pin sensation was decreased in the posterolateral aspects of both

feet.  Plaintiff could squat and rise.  *Id.*

Dr. Chodosh concluded that Plaintiff has chronic neck pain and

headaches without overt physical abnormalities or evidence of impairment;

complaint of diplopia without physical signs of impairment, although near

vision is poor; and he has leg and foot pain without signs of major physical

impairment.  Tr. 413.  Dr. Chodosh concluded that based on the objective

evidence, Plaintiff can stand, walk, sit, bend at the waist, squat, kneel, lift,

carry, and handle objects.  *Id.*  Although near vision is poor, Plaintiff's other

vision function is intact.  *Id.*  The ALJ gave Dr. Chodosh's assessment

great weight on the basis that it was consistent with the record as a whole. Even so, the ALJ limited the Plaintiff's RFC to a reduced range of light work.  Tr. 21.

A September 2013 review of the record by the State agency medical consultant concluded that Plaintiff could perform a reduced range of light work—an opinion given great weight by the ALJ.  Tr. 21; Tr. 86-95, 96-105. The ALJ also noted that progress notes from Family Practice Associates from March 3, 2014, state that Plaintiff's pain had gotten worse, but that active range of motion in the cervical spine was within normal limits.  Tr. 21; Tr. 419.  Those notes also show that Plaintiff had 5/5 motor strength. Tr. 419

In September 2014, Plaintiff saw Southeastern Neurology with complaint of headache and double vision.  Tr. 489.  The ALJ noted that at that time Plaintiff reported using Advil or Tylenol daily but in December 2014, Plaintiff reported he had limited the use of those medications to 2 to 3 times per month.  Tr. 21; Tr. 499.  An MRI of Plaintiff's brain on August 11, 2014, was normal.  Tr. 569.

Based on review of the medical record, the ALJ concluded that although the record confirms the existence of the impairments, it does not support an inability to work.  Tr. 21.  The musculoskeletal assessments and

examinations were fairly benign, and the ALJ found that the Plaintiff has not received the type of medical treatment expected for a disabled person.  *Id.* The ALJ noted that in March 2014, Plaintiff had a decreased range of motion in his cervical spine, but did not have lack of motion in the upper extremities bilaterally.  Internal and external rotation passively was without pain or instability in the right shoulder.  Tr. 21; Tr. 454-55.

At the hearing, the vocational expert was asked if any occupations exist that could be performed by an individual of the same age as Plaintiff, with the same education, past relevant work experience, with stated limitations, and which would require no additional skills.  Tr. 55-56.  Past relevant work of bakery manager and airbrush artist was ruled out due to Plaintiff's poor near vision. Tr. 57-58.  Assembly jobs were likewise ruled out.  With Plaintiff's vision limitations, the vocational expert opined that Plaintiff could perform the work of cleaner, housekeeping, DOT #323.687-014, light unskilled, SVP of 2, with 750,000 jobs in the national economy. Tr. 59.

In finally reaching the conclusion that Plaintiff can perform a reduced range of light work, the ALJ recognized that although the Plaintiff may experience pain, discomfort, and numbness in his right hand, and has poor vision, he does not have the type of impairment that would prevent him

from performing a reduced range of light work with additional restrictions stated in the RFC finding.  Tr. 22.  Based on the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform the representative occupation of cleaner, housekeeping and was therefore not disabled. Tr. 23.

## B. Discussion of Issues on review

Plaintiff alleges that the ALJ erred (1) in not including in the hypothetical given to the vocational expert any limitations regarding Plaintiff's "documented migraine headaches;" (2) in failing to prove that Plaintiff's testimony concerning his migraine headaches and double vision were not credible; (3) in failing to properly assess the effect of Plaintiff's visual impairment on ability to perform work; and (4) in failing to consider each severe impairment and the combined effects of them in assessing Plaintiff's RFC.  ECF No. 15 at 5-9.

## 1.  Migraine Headaches

Plaintiff contends that the medical record documents chronic headaches from the time of his work-related injury in 2009 when a piece of equipment fell on the right side of his neck and right shoulder.  ECF No. 15 at 5.  Plaintiff notes that the ALJ failed to include in the hypothetical question presented to the vocational expert any effect on his ability to work

caused by his headaches; and that when asked about headaches by Plaintiff's counsel, the vocational expert testified that if Plaintiff was required to take unscheduled breaks of 45 minutes to one hour at least twice a week, as posed by counsel, an employer might allow this for a good employee, but such would be considered an atypical accommodation. Tr. 61-62. For these reasons, Plaintiff contends the decision must be reversed and remanded.

The viability of Plaintiff's argument depends upon the medical record substantiating Plaintiff's testimony that his migraine headaches occur at least twice a week and require him to go to a quiet, dark place for 45 minutes to one hour each time. At the majority of Plaintiff's visits with medical personnel, his headaches were not the focus or were not mentioned. On May 20, 2009, office notes from Fit For Life Physical Therapy stated that Plaintiff had decreasing complaints of shoulder tightness and "decreasing complaints of headache." Tr. 293.[8] December 2, 2009, notes from Fit For Life Therapy stated that "patient reports not having any difficulty or problems with headaches." Tr. 287. January 14,

---

[8] This recitation of portions of the medical evidence is based on the Court's independent review of the record.

2010, notes from Fitness for Life Therapy states that Plaintiff "reported not having any regular headaches."  Tr. 286.

On March 22, 2010, Plaintiff saw D. Troy Trimble, D.O., at The Orthopaedic Institute, and reported shoulder and neck pain and "having a headache that was not present prior to the work injury."  Tr. 358.  He was currently not using any NSAIDs.  *Id.*  He was assessed with cervicalgia with right shoulder pain status post work injury and the notes indicate he might benefit from a referral to physical medicine and rehabilitation and from a C6/7 or 5/6 epidural injection.  Tr. 359.  No specific assessment or recommendations were made concerning Plaintiff's complaint of headache. *Id.*

In May 2010, Dr. Christopher Leber, of Southeastern Rehabilitation, noted Plaintiff's complaint was "positive for headaches, joint pain, leg pain." Tr. 407.  The treatment plan recommended included electrodiagnostic studies of the right upper extremity to rule out radiculopathy versus neuropathy, Lyrica, and injections.  Tr. 409.  Nothing was mentioned about the frequency of or possible treatment plan for headaches.

In August 5, 2010, notes from Southeastern Rehabilitation again indicate that Plaintiff "relates to having some radiation type headaches since the accident."  Tr. 397.  The notes document that an MRI of the

cervical spine showed a right-sided paracentral disc extrusion at the C4-5 level with canal stenosis and a left paracentral disc protrusion at C6-7 with uncovertebral joint hypertrophy at C5-6. Tr. 398. Electrodiagnostic studies showed chronic C6 radiculopathy on the right side and medial neuropathy at the right wrist. *Id.* Plaintiff was given a translaminar epidural steroid injection at the C5-6 area for the right C6 nerve root. Tr. 399.

In office notes from Plaintiff's September 9, 2010, visit to Dr. Leber at Southeastern Rehabilitation, Plaintiff's "muscle tension headaches secondary to work injury" were noted but no reference was made to frequency or recommended treatment specific to headache. Tr. 392-93. He was given a second steroid injection. Tr.389. Plaintiff received another steroid injection on September 23, 2010. Tr. 386-87.

Plaintiff's muscle tension headaches secondary to work injury was again noted along with his cervical problems and wrist neuropathy on October 10, 2010, when Plaintiff returned to Southeastern Rehabilitation. Tr. 384. No reference was made to frequency of or treatment for headaches. *Id.* He was recommended to continue range of motion and regular exercise. Tr. 385.

On March 11, 2011, Plaintiff returned to Southeastern Rehabilitation and reported right-sided neck pain "not currently severe" and stated he was

not using any medications at the current time.  Tr. 465.  The notes stated that no neurologic deficits were identified.  No mention was made of headaches.  *Id.*

Plaintiff was given a consultative examination by Dr. Lance Chodosh, of Family Practice and Occupational Medicine on June 20, 2013.[9]  Tr. 410.  Dr. Chodosh noted that Plaintiff alleges neck injury, loss of feeling in right arm, double vision, constant migraines, poor circulation in legs and cervical nerve damage.  *Id.*  Dr. Chodosh noted that Plaintiff's medical history included headaches.  *Id.*  Dr. Chodosh's impressions and comments included "[c]hronic neck pain and headaches, without overt physical abnormalities or evidence of impairment."  Tr. 413.  He also noted complaint of diplopia, but without physical signs of impairment.  Near vision is poor."  *Id.*  Leg and foot pain without signs of major physical impairment was also noted.  *Id.*  Dr. Chodosh concluded that Plaintiff can stand, walk, sit, bend over at the waist, squat, kneel, lift, carry, and handle objects; that his near vision is relatively poor but other vision function is intact, and he can hear and speak normally.  Tr. 413.  Dr. Chodosh did not identify any specific limitation based on headache.

---

[9] The medical records are virtually silent as to medical examinations or treatments in 2012.

A State agency medical consultant review of records signed by Sharmishtha Desai, M.D., on September 6, 2013, concluded that Plaintiff has exertional limitations, can occasionally lift and carry 20 pounds, can sit for about 6 hours in an eight-hour workday, and can stand and/or walk about 6 hours in a workday with normal breaks. Tr. 91. Other stated limitations relating to neck pain, cervicogenic headache and right cervical radiculopathy included limited overhead reaching and limited right hand gross manipulation. Tr. 92.

Plaintiff saw Dr. Rene Pack at Family Practice Associates on many occasions in 2013 without reference in the office notes to headache. *See* Tr. 419-41. Headache was listed in notes from August 4, 2014, at which time Plaintiff was referred to neurology. Tr. 559. An August 11, 2014, brain MRI was normal. Tr. 569.

On March 31, 2014, Plaintiff saw Dr. Leber at Southeastern Rehabilitation for right neck pain, right upper extremity numbness and headaches. Plaintiff reported that he "does get migraines at times." Tr. 466. Plaintiff was referred to ophthalmology for his diplopia and to pain management for evaluation and cervical epidural injections. Tr. 469. Plaintiff was urged to increase his walking. *Id.* On June 9, 2014, Plaintiff saw Dr. John Bailey and received a pain management injection. Tr. 477.

At that time, Plaintiff denied any headache.  Tr. 478.  He received another injection in July 9, 2014, at which time he again denied any headache. Tr. 481.  Plaintiff reported his activities included watching television, reading, occasional gardening, and family time.  *Id.*

Plaintiff saw neurologist Dr. Anthony Ackerman on September 26, 2014, for headache and diplopia.  Tr. 489.  Dr. Ackerman assessed chronic daily headaches and prescribed Topamax.  Tr. 491.  At a December 8, 2014, follow-up visit with Dr. Ackerman, Plaintiff reported no change in headaches, but had only taken Topamax for three weeks.  Tr. 499.  Plaintiff was recommended to restart Topamax and to follow up with the ophthalmologist for the diplopia management.  Tr. 501-02.

At a February 12, 2015, visit to Dr. Ackerman, Plaintiff reported that the headaches were not significantly improved and are constant with one to two exacerbations per week.  Tr. 510.  Plaintiff was put on a trial of doxepin for adjunctive headache prophylaxis and insomnia in addition to Topamax. Tr. 512.  As of April 13, 2015, Plaintiff was still being seen by ophthalmologists regarding his diplopia.  Tr. 268.

The ALJ recognized that Plaintiff testified that he has migraine headaches several times a week and normal headaches all the time, Tr. 19, but concluded that the medical record does not support the

claimant's statements of the intensity, persistence, and limiting effects of the headache symptoms.  Tr. 19.  The hypothetical question presented to the vocational expert was consistent with the credible functional limitations based on the totality of the medical record.  A hypothetical question is not required to include limitations that are not supported by the record or that the ALJ rejected as unsupported.  *See, e.g.*, Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004); Yates v. Comm'r of Soc. Sec., --- F. App'x ----, 2017 WL 4785941, *5 (11th Cir. Oct. 24, 2017) (unpublished) (ALJ who found severe impairments including headache did not err in failing to include migraine headache in the hypothetical question where ALJ correctly found the medical evidence did not support the assertions of completely disabling pain relating to migraines).

As the ALJ notes in the present case, the bulk of the medical evidence is silent regarding headaches and migraines, and where headaches were discussed in the medical record, there was scant evidence of frequency and limiting effect.  An impairment may be found to be severe for step two purposes as a threshold inquiry.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).  That only means that the impairment is not so slight and its effects not so minimal that it would clearly not be expected to interfere with the individual's ability to work

irrespective of age, education, or work experience.  *Id.*  A finding that an impairment is severe does not require a specific limitation based on that impairment unless supported by the medical record.  *See, e.g.,* Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (rejecting claimant's contention that ALJ decision was 'internally inconsistent,' where ALJ found that an impairment was severe but failed to include limitations relating to impairment in RFC assessment); Griffeth v. Comm'r of Soc. Sec., 217 F. App'x. 425, 427-28 (6th Cir. 2007) (unpublished) (same); Davis v. Comm'r of Soc. Sec., No. 6:12-cv-1694-ORL-36, 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013) (same).

The medical record shows that despite his headaches, Plaintiff consistently exhibited normal neurological assessments, normal gait and balance, normal motor function and strength, and postural abilities consistent with light work.  The objective medical evidence did not support the claim that migraine headaches would cause Plaintiff to take lengthy work breaks at least twice a week.  Thus, the ALJ did not err in failing to include that limitation in the hypothetical question presented to the vocational expert.

## 2. Credibility Finding

Plaintiff next contends that the Commissioner erred in not proving by medical evidence that the claimant's testimony regarding his impairments of chronic migraine headaches and double vision were not credible.  ECF No. 15 at 7.  He contends that the Commissioner erred in failing to make specific findings to support the conclusion that Plaintiff's complaints of pain or other non-exertional limitations are not credible.  *Id.*

The ALJ notes Plaintiff's testimony that he has migraine headaches three to four times a week which require him to lie down in a dark room for 45 minutes to one hour, and that he has regular headaches all the time. Tr. 19.  However, the ALJ found that the statements concerning intensity, persistence, and limiting effects of the symptoms cause by his impairments were not entirely credible for the reasons explained in the decision.  *Id.* Those stated reasons included the January 2010 treatment notes from Fit For Life Physical Therapy in which Plaintiff reported not having any regular headaches, nor any restrictions on daily activities.  Tr. 20; Tr. 286.  The ALJ also cited September 2015 treatment notes where Plaintiff's headaches are discussed and in which Plaintiff indicated he had limited his use of painkillers to 2 or 3 times in the past month.  The ALJ also relied on the consultative examination by Dr. Chodosh in which headaches were

noted but no limitations assigned.  Similarly, the ALJ relied on the State agency medical consultant review of records on September 6, 2013, which concluded that Plaintiff has exertional limitations, can occasionally lift and carry 20 pounds, can sit for about 6 hours in an eight-hour workday, and can stand and/or walk about 6 hours in a workday with normal breaks. Tr. 91.  Although the notes listed migraine headache an impairment diagnosis, Tr. 90, the consultant did not find that the Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by objective medical evidence.  *Id.*

The ALJ also found Plaintiff's poor near vision to be a severe impairment, but cited the fact that Plaintiff can dress, bathe, prepare simple meals, load the dishwasher, do laundry, vacuum, dust, sweep, mop, and drive during the day.  Tr. 19.  These findings are supported by the record. Plaintiff testified that his vision impairment limits his ability to use a computer and read.  The ALJ found, in reliance on the testimony of the vocational expert, that Plaintiff could do light, unskilled cleaning and housekeeping work.

In evaluating the limiting effect of a claimant's symptoms, the ALJ is allowed to consider factors including the claimant's daily activities, the location, duration, frequency, and intensity of the pain, treatment other than

medication that the claimant has received, and whether medications or other measures can relieve the pain or symptoms. *See* 20 C.F.R. § 404.1529(c)(3); Social Security Ruling 16-3p (2016 WL 1119021 (Mar. 16, 2016). Based on the objective medical evidence and the other factors discussed in the decision, the ALJ concluded that although the record confirms the existence of the impairments, it does not support a resulting inability to work. Tr. 21. The ALJ also noted that Plaintiff has not received the type of medical treatment one would expect for a disabled person. *Id.* Substantial evidence in the medical record supports this finding and the ALJ's credibility determination.

The ALJ did not make a broad, unexplained rejection of the credibility of Plaintiff's testimony regarding the intensity, frequency, or persistence of his symptoms, but considered the medical record and Plaintiff's testimony as a whole. *See* Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Plaintiff bears the burden of proving that he is disabled. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The ALJ has the responsibility to weigh the medical evidence and resolve any conflicts in the record. *See* Battle, 243 F. App'x at 523 (unpublished). The medical record, and the testimony of Plaintiff's activities of daily living, do not substantiate Plaintiff's testimony that his headaches or vision impairment preclude him from

working.  The ALJ's weighing of the evidence, and resolution of conflicts in the record and credibility of the effects of the impairments, have not shown to be error.

### 3.  Visual Impairment

Plaintiff separately contends that the ALJ mischaracterized his vision impairments as simply a reduction in vision when the record consistently refers to Plaintiff's diplopia, or double vision, and esotropia, which can cause a cross-eyed appearance.  ECF No. 15 at 8.  He argues that these conditions create additional limitations on claimant's ability to see and add further credibility to Plaintiff's claims concerning his chronic headaches. However, for the same reasons discussed above, the ALJ had substantial evidence in the record to conclude that these conditions did not render Plaintiff totally disabled.  He testified that he does many household chores, grocery shops, does some light cooking, and can drive a car.  Dr. Chodosh concluded that while Plaintiff's near vision was poor, his other vision function was intact.  Tr. 413.  The office notes from Plaintiff's visit to Southeastern Neurology on September 16, 2014, state that Plaintiff's diplopia is "palliated by covering each eye independently as well as with use of corrective prisms."  Tr. 489.  Error in the ALJ's assessment of limitations caused by Plaintiff's vision impairment has not been shown.

### 4. Combined Effect of Impairments

In his last claim of error, Plaintiff contends that the Commissioner erred in failing to consider each severe impairment and the effect of all the impairments in combination in reaching the conclusions about Plaintiff's residual functional capacity. ECF No. 15 at 8-9. Even though the issue is couched in terms of failure to consider the impairments in combination, Plaintiff again argues that the ALJ should have included the effect of Plaintiff's headaches in determining the residual functional capacity. This claim is essentially a reiteration of the foregoing claims concerning the ALJ's findings relating to the medical evidence concerning his headaches and the credibility of Plaintiff's testimony concerning the intensity, persistence, and limiting effect of the symptoms reasonably expected to be caused by this impairment. As discussed above, the medical record and testimony taken as a whole do not provide a basis to conclude that Plaintiff's headaches rendered him totally disabled.

## V. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, the decision of the Commissioner to deny Plaintiff's application for Disability Insurance Benefits and Supplemental Security

Income is **AFFIRMED** and the Clerk is **DIRECTED** to enter judgment for

the Defendant.

    **IN CHAMBERS** at Tallahassee, Florida, on November 21, 2017.


                **s/ Charles A. Stampelos**
                **CHARLES A. STAMPELOS**
                **UNITED STATES MAGISTRATE JUDGE**